DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

CLIFTON WESTON and VALONA WESTON,

Appellants,

v.

UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY,

Appellee.

No. 2D2024-1340
_____

October 24, 2025

Appeal from the Circuit Court for Pasco County; Alicia Polk, Judge.

Barbara M. Hernando, Dean Makris and Gabriel F. Torre of Makris & Mullinax, P.A., Tampa, for Appellants.

Daniel M. Schwarz, Kara Rockenbach Link and David A. Noel of Link & Rockenbach, P.A., West Palm Beach; and Jayson A. Serrano and Samantha L. Mazer of Salmon & Salmon, P.A., Tampa, for Appellee.

SILBERMAN, Judge.

Clifton and Valona Weston appeal a final judgment entered in favor of their homeowners insurance company, Universal Property & Casualty Insurance Company. The Westons filed a breach of contract complaint against Universal after a coverage dispute arose pertaining to roof repairs. During trial, the court entered three directed verdicts in favor of Universal and thereafter entered final judgment in its favor. We conclude

that the trial court erred in entering the directed verdicts and final judgment in Universal's favor and reverse and remand for a new trial.

## I. BACKGROUND

The Westons were insured by Universal when a storm damaged their roof on April 24, 2020. After inspecting the property, Universal claimed that only twenty-two roof shingles were damaged and estimated that the replacement cost value of the shingles and the cost to repair the interior damage to the home was $1,089.65. After subtracting the policy deductible of $1,000, Universal issued a payment to the Westons for $89.65.

The Westons disagreed with Universal's estimates and obtained estimates from two roofers who both recommended that the roof be replaced based on their evaluations as to the scope of work required to repair the roof and home. The Westons submitted the estimates to Universal along with a sworn proof of loss. After receiving these documents, Universal informed the Westons that, based on its investigation of the claim, a full roof replacement was not required and that its payment of $89.65 was correct. Based on Universal's position that the Westons' claim for additional repairs was not covered under the policy, the Westons filed suit.

When the case proceeded to trial, the Westons presented the testimony of Richard Leon Cannyn, the principal project engineer for Beryl Project Engineering. Mr. Cannyn is also a building inspector, a housing code inspector, a roof data technician, and a forensic engineer. His opinion was that, within a reasonable degree of engineering certainty, the Westons' roof needed to be replaced. There was damage to more than twenty-five percent of the roof, and the Florida Building Code provided that if more than twenty-five percent of the roof was damaged,

2

then the entire roof should be replaced. He noted that the roof should also be replaced because the new shingles would not match the color of the old ones.

The Westons then presented the testimony of Dennis James, the owner of Triad Restoration Services. He testified that his company created estimates for the cost to repair the damage to the home which included replacement cost value and actual cash value amounts. The estimate for the replacement cost value of the damage was $60,950.86, and the actual cash value for the damage was $46,613.86.

The corporate representative for Universal, Heather Martinez, testified that when the company initially received the claim, it arranged for a field adjuster to inspect the property. Universal determined that the property suffered wind damage and that twenty-two shingles were damaged. The field adjuster's estimate was the only estimate that Universal received prior to the lawsuit that was limited specifically to the direct physical damage (the twenty-two shingles) at the property.

## II. THE POLICY

The parties' policy is an all-risks homeowner's policy. It provides that for buildings "[c]overed property losses are settled . . . at replacement cost without deduction for depreciation," subject to additional policy terms. Pertinent to the issue here, the policy provides that if the amount of insurance

> on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:
>
> (1)    The limit of liability under this policy that applies to the building;

3

(2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

(3) The necessary amount actually spent to repair or replace the damaged building.

The policy also provides the Westons with ordinance or law coverage:

11. Ordinance Or Law

a. You may use up to 25% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

Finally, the "Loss Settlement" section of the policy obligates Universal to "initially pay at least the actual cash value of the insured loss, less any applicable deductible." After this initial payment, Universal is required to "pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred." Section 627.7011(3)(a), Florida Statutes (2020), similarly provides that when an insured has a replacement-cost policy, "the insurer must initially pay at least the actual cash value of the insured loss, less any applicable

4

deductible.  The insurer shall pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred."

## III.  DIRECTED VERDICTS

*First Directed Verdict*

After both parties rested, the trial court ruled that the Westons did not establish that Universal breached the insurance contract because they did not establish that Universal failed to pay the actual cash value of the damaged property.  The court found that Mr. James's estimate was not an actual cash value estimate because "Mr. James's estimate included costs for matching, costs incidental to the repair and construction process, and costs for compliance with the building code's 25% rule, all of which address repairs to portions of the property that were not directly and physically damaged by the claimed loss."

Because the court concluded that Mr. James's estimate was not an actual cash valuation for the loss, it found that the only estimate in evidence containing an actual cash valuation was Universal's estimate. Therefore, the court reasoned, the Westons presented no evidence on which a reasonable juror could find that Universal failed to pay at least actual cash value for the loss.

*Second Directed Verdict*

The trial court ruled that once Universal paid the actual cash value for the loss, less the deductible, it was not required to make any further payments until additional work was performed and expenses were incurred.  Because the Westons did not begin to replace their roof before filing suit, the court found that Universal was under no obligation to make any additional payments.

*Third Directed Verdict*

5

The trial court found that Universal issued payment to the Westons based on its field adjuster's estimate, which was the only estimate of the actual cash value of the loss it received prior to suit. As a result, the court ruled that the only estimate in evidence presented to Universal prior to suit was the estimate on which it made payment.

## IV.  DISCUSSION

This court reviews a trial court's ruling on a defendant's motion for directed verdict de novo. *Lambert v. Emerson*, 304 So. 3d 364, 367 (Fla. 2d DCA 2020), *aff'd,* 374 So. 3d 756 (Fla. 2023).

> A motion for directed verdict should be granted only where no view of the evidence, or inferences made therefrom, could support a verdict for the nonmoving party. In considering a motion for directed verdict, the court must evaluate the testimony in the light most favorable to the nonmoving party and every reasonable inference deduced from the evidence must be indulged in favor of the nonmoving party. If there are conflicts in the evidence or different reasonable inferences that may be drawn from the evidence, the issue is factual and should be submitted to the jury.

*James v. City of Tampa*, 193 So. 3d 1040, 1042 (Fla. 2d DCA 2016) (quoting *Sims v. Cristinzio*, 898 So. 2d 1004, 1005 (Fla. 2d DCA 2005)). We conclude that the evidence presented at trial, when viewed in the light most favorable to the Westons, could support a verdict in their favor and that the trial court erred in not allowing the jury to hear the parties' competing valuations of the Westons' loss.

In granting the first directed verdict, the trial court found that the Westons did not present any evidence on which a reasonable juror could find that Universal failed to pay at least actual cash value for the loss. As previously noted, in making this finding, the court rejected Mr. James's estimate because it "included costs for matching, costs incidental to the repair and construction process, and costs for

6

compliance with the building code's 25% rule, all of which address repairs to portions of the property that were not directly and physically damaged by the claimed loss."

In entering the directed verdict, the trial court relied on *Vazquez v. Citizens Property Insurance Corp.*, 304 So. 3d 1280, 1285 (Fla. 3d DCA 2020), which held that actual cash value in the insurance policy did not include the cost of replacing undamaged floor tiles so that they would match the replaced damaged tiles. We find *Vazquez* distinguishable from the present case.

The Westons' policy included ordinance and law coverage that required Universal to cover costs that the Westons incur as a result of any ordinance that requires them to replace "the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against." Mr. Cannyn testified that the Florida Building Code required that the entire roof be replaced because there was damage to more than twenty-five percent of the roof. Although the parties disagreed on the method used to determine that there was damage to twenty-five percent of the roof, the trial court was required to view the testimony in the light most favorable to the Westons and give them every reasonable inference deduced from that evidence. *See James*, 193 So. 3d at 1042. Because there was evidence that the Florida Building Code required roof replacement, the trial court erred in rejecting Mr. James's actual cash value estimate.

Additionally, Ms. Weston testified that both the loft area and guest bedroom of the home sustained water damage. Mr. James's estimate included the cost to repair both the loft and the bedroom, while

Universal's estimate failed to include repairs to the bedroom. We conclude that the parties' disputes regarding damage to the bedroom, the percentage of the roof that was damaged, and the cost to repair the damages to the home were factual disputes that should have been submitted to the jury, and the trial court erred in entering a directed verdict in favor of Universal.

In granting the second directed verdict, the trial court ruled that under the loss settlement section of the policy, once Universal paid the actual cash value for the loss, less the deductible, it was not required to make any further payments because the Westons did not begin to replace their roof before filing suit. While the case was on appeal, this court issued the decision in *Brito v. Citizens Property Insurance Corp.*, 415 So. 3d 252 (Fla. 2d DCA 2025). The insurance policy in *Brito* was similar to the policy here, but in that case the insurer denied coverage entirely. *Id.* at 252-53. This court held that the plain language of both the loss settlement section of the policy and section 627.7011(3)(a) clearly state "that the Insurer's option to initially pay only actual cash value and to withhold the rest of the replacement costs until the work is completed is limited to <u>covered</u> claims." *Id.* at 255. This court held that where an insurer denies coverage entirely, neither the policy nor the statute prevents an insured from seeking damages for breach of contract. *Id.* The loss settlement section of the policy does not limit coverage but instead " just prescribes how and when the payment of covered losses is to be divvied up." *Id.* at 257 (Atkinson, J., concurring).

Universal maintains on appeal that in order for the Westons to recover for roof replacement, they must first pay for the full roof replacement and provide a copy of their payment to Universal. We reject this argument for two reasons. First, the loss settlement portion of the

8

policy obligates Universal to first pay the actual cash value of the loss, less any applicable deductible, and then it must "pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred." It is undisputed that Universal rejected the Westons' claim that their roof damage exceeded twenty-two roof shingles. On that basis, Universal maintained that it had no further obligation to the Westons and was unwilling to pay the actual cash value of the roof replacement and interior damage. Thus, the second directed verdict was erroneous as Universal was arguably in breach of the policy by rejecting the Westons' claim for roof replacement and related damages and, as a result, failing to pay the actual cash value of the loss.

Second, the application of the loss settlement section to preclude the Westons from seeking damages here suffers from the same infirmities as it does in those cases where coverage has been denied entirely. According to Universal, if an insured does not make repairs to their home after an insurer has determined that the repairs are unnecessary, then the insured is precluded from asking a court to determine whether the insurer improperly refused to cover the loss. This approach places insureds in the untenable position of paying for what they contend should be covered by the insurer and then hoping that the insurer will have a change of heart, despite repeated denials, and reimburse them for their loss.[1]

---

[1] Ms. Weston testified that Universal never told her that if she replaced the roof at her own expense and submitted the receipts for it, she would be reimbursed. Indeed, after Universal rejected the Westons' claim that a roof replacement was required and covered, Universal maintained that it had no further obligation after it paid $89.65 for replacement of twenty-two roof shingles and interior repairs.

Neither the insurance policy nor section 627.7011(3)(a) requires an insured to undertake this risk. Universal's allegedly improper denial of coverage for the roof replacement and repairs to the interior of the home necessitated the Westons' lawsuit, which "should include an adjudication of damages that includes *all* of what the insurer would have been obligated to pay under the contract should the insureds prevail in their claim that the insurer breached the contract by denying coverage." *Id.* at 258 (Atkinson, J., concurring).

In granting the third directed verdict, the trial court found that Universal paid the Westons based on Universal's field adjuster's estimate, which was the only estimate of the actual cash value of the loss it received prior to suit. The court stated that Universal "did all that it could be reasonably expected to do under the policy. It paid the only estimate it received of the loss's actual cash value."

The trial court erred in entering the third directed verdict because, as acknowledged by Universal's corporate representative, Ms. Martinez, the policy did not require the Westons to provide the company with an actual cash value estimate before filing suit. This is especially notable as Universal had taken the position well before suit was filed that its payment of $89.65 fulfilled its obligation to the Westons. The trial court's reliance on *Goldberg v. Universal Property & Casualty Insurance Co.*, 302 So. 3d 919, 922 (Fla. 4th DCA 2020), was erroneous because the insured in that case never provided the insurer with any estimate before filing suit. Unlike the insured in *Goldberg*, Ms. Martinez testified that Universal received estimates for roof repairs from the Westons before they filed suit. Universal simply disagreed with the estimates because they were for roof replacement and related repairs, which Universal had

10

determined were unnecessary. Thus, the Westons satisfied their obligations under the policy before filing suit.

Accordingly, we reverse the final judgment in favor of Universal and remand this case for a new trial.[2]

Reversed and remanded.

LUCAS, C.J., and VILLANTI, J., Concur.

_____

Opinion subject to revision prior to official publication.

---

[2] It is worth noting that it is typically the better practice for a trial court to submit a case to the jury, even though the court may be inclined to grant a motion for directed verdict. *See Freeman v. Rubin*, 318 So. 2d 540, 543 (Fla. 3d DCA 1975). If, after receiving the jury verdict, the court determines that entry of a directed verdict is appropriate, it may do so. In the event that an appeal results in a reversal of the directed verdict, the existence of a jury verdict may make a new trial unnecessary. *See Ditlow v. Kaplan*, 181 So. 2d 226, 227 (Fla. 3d DCA 1965).